# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Ruth A. Tharaldson and                           Civil No. 11-1392 (DWF/AJB)
Lon D. Tharaldson,

                    Plaintiffs,

v.                                                              **MEMORANDUM**
                                                      **OPINION AND ORDER**

Ocwen Loan Servicing, LLC;
Mortgage Electronic Registration Systems, Inc.,
as nominee for Delta Funding Corporation; and
HSBC Bank USA, N.A.;

                    Defendants.

---

Amoun Vang Sayaovong, Esq., Legal Solutions LLC; and Christopher P. Parrington, Esq., and Patrick D. Boyle, Esq., Skjold Parrington, PA, counsel for Plaintiffs.

David R. Mortensen, Esq., Wilford, Geske & Cook, PA, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss (Doc. No. 11) brought by

Defendants Ocwen Loan Servicing, LLC ("Ocwen"), Mortgage Electronic Registration

Systems, Inc. ("MERS"), and HSBC Bank USA, N.A. ("HSBC Bank") (together,

"Defendants").  For the reasons set forth below, the Court grants Defendants' motion.

## BACKGROUND

In 1997, Plaintiffs purchased their current place of residence located at an address

on Hickory Boulevard in Belle Plaine, MN 56011 (the "Property").  (Am. Ver. Compl.

¶ 1.)  On April 4, 2005, Plaintiffs refinanced the Property by executing a note in favor of

Delta Funding Corporation ("Delta") in the amount of $294,100, at an interest rate of

7.39% over the course of 30 years.  (*Id.* ¶ 12.)  To secure the note, Plaintiffs executed a

mortgage to MERS, as nominee for Delta, its successors and assigns, which was recorded

with the Scott County Recorder on April 18, 2005 (the "Mortgage").  (*Id.* ¶¶ 11-12; Doc.

No. 13, Ex. 1.)[1]  Per the terms of the Mortgage, Plaintiffs were obligated to make

monthly payments of $2,225.95 ($2,034.28 in principal and interest, $68.50 in tax

escrow, and $123.17 in insurance escrow).  (*Id.* ¶ 15.)  On April 13, 2005, the servicing

of Plaintiffs' loan was transferred to Ocwen.  (*Id.* ¶ 13.)  Plaintiffs allege, upon

information and belief, that Plaintiffs' note was assigned to HSBC Bank and that Ocwen

remained the servicing agent.  (*Id.* ¶ 14.)

     In 2008, Plaintiffs began to experience financial difficulties.  (*Id.* ¶¶ 18-20.)

Plaintiffs fell behind in their mortgage payments and, while making their payments in

---

[1]     Defendants have requested that the Court take judicial notice of:  (1) a true and
correct copy of the Mortgage, executed by Plaintiffs, dated April 4, 2005, and recorded
with the Scott County Recorder on April 18, 2005, as Document No. A694874; (2) a true
and correct copy of the Notice of Default from Ocwen to Plaintiffs, dated April 3, 2010;
and (3) a true and correct copy of the initial letter from Ocwen's foreclosure counsel,
Randal S. Miller & Assoc., dated June 3, 2010, notifying Plaintiffs that Ocwen has
referred the Mortgage for foreclosure and provided the accelerated loan amount.  (Doc.
No. 13.)  Plaintiffs oppose the request for judicial notice and urge the Court to rely only
on the allegations contained in, and the documents attached to, the Amended Verified
Complaint or to treat the motion as one for summary judgment and deny it as premature.
     The Court concludes that the documents for which Defendants seek judicial notice
are embraced and/or referenced by the pleadings and do not contradict any claims or
statements made by Plaintiffs in the Amended Verified Complaint.  Therefore, the Court
may properly consider these documents without converting the motion to dismiss into a
motion for summary judgment.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077,
1079 (8th Cir. 1999).  Because the documents are properly considered, the Court need not
reach the issue of judicial notice.

full, did not always do so in a timely manner.  (*Id.* ¶ 20.)  On or about December 9, 2008,

Plaintiffs received a notice from Ocwen regarding a "Streamlined Loan Modification"—

the "2008 Loan Modification Offer."  (*Id.* ¶ 21, Ex. A.)  The offer read in part:

## IMPORTANT NOTICE ABOUT YOUR MORTGAGE LOAN!
## REDUCE YOUR MONTHLY PAYMENT NOW!

. . .

Program Code:  STREAMLINED LOAN MODIFICATION

Dear Valued Customer:

In our continuing effort to help preserve homeownership, we are very pleased to present you with this exciting offer.  By accepting this loan modification you may receive the following benefits:

1.  Your monthly payment will be reduced from $2,034.28 to $1,775.56.

2.  Your loan would be contractually current upon modification.  Your existing past due amounts, including but not limited to interest, escrow advances, collection related fees and costs and late fees would be added to the principal balance of your loan, thus spreading the recovery of such past due amounts over the remaining term of your loan.  (Note: Interest would be charged on the new outstanding principal balance, and a balloon payment will be due at the maturity date of your loan.)

3.  Your loan would be reported as current on your credit report under the terms of the modification, which may help to improve your credit score.

4.  Your interest rate would be set at 6.95% for the life of the loan.

5.  You may be able to avoid certain future late fees from being incurred after modification.

In order to take advantage of this offer, we must receive the first modification payment of $1,775.56 **prior to January 15, 2008.**  *Please write your loan number on your check.*

. . .

>We urge you to **ACT NOW** as this opportunity is being offered on a limited basis, and you will not be charged any fees or costs related to this offer.
>
>. . . .

(*Id.*)

Plaintiffs noticed that the 2008 Loan Modification Offer appeared to contain a typographical error—in that the offer provided that the first payment was due on January 15, 2008, despite the fact that the notice was dated December 2008. (*Id.*) Plaintiffs attempted to contact Ocwen and allege that, despite their efforts, they were unable to speak with a representative. (*Id.* ¶¶ 23-24.) Plaintiffs concede that they were unable to accept the offer. (*Id.* ¶ 25.)

Plaintiffs continued to attempt to contact Ocwen to express interest in modifying their loan. (*Id.* ¶ 27.) Ocwen recommended that Plaintiffs apply for a loan modification under the Home Affordable Mortgage Program ("HAMP"). (*Id.* ¶ 28.) In August 2009, Plaintiffs applied for a HAMP modification. (*Id.* ¶ 29.) On or about November 3, 2009, Plaintiffs received notice that they were not eligible for a modification under the HAMP program because Plaintiffs' debt-to-income ratio was too low. (*Id.* ¶ 32, Ex. B.) Plaintiffs offered to return to paying their normal monthly payments, but Ocwen indicated that this was no longer an option and that they must seek a modification. (*Id.* ¶ 34.)

In November 2009, Plaintiffs applied again for a loan modification with Ocwen. (*Id.* ¶ 35.) On December 9, 2009, Ocwen notified Plaintiffs that their application had been approved and offered them a modification that called for an initial payment in the

amount of $2,334 and monthly modified payments in the amount of $1,960 (the "2009 Loan Modification Offer"). (*Id*. ¶ 36, Ex. C.) Also pursuant to the 2009 Loan Modification Offer, the interest rate of 6.55% would apply until January 2013, at which point it would increase to 7.15%. (*Id*.) Plaintiffs allege that they were concerned by the terms of the loan modification proposal and attempted to reach Ocwen to discuss the modification. (*Id*.) Plaintiffs allege that they attempted to speak with Ocwen representatives for three months, but were directed to automated prompts or placed on hold for long amounts of time. (*Id*. ¶ 39.)

Plaintiffs executed the 2009 Loan Modification and made the first two payments under the executed 2009 Loan Modification. (*Id*. ¶¶ 36, 40 & Ex. C.) Plaintiffs missed their third payment. (*Id*. ¶ 41.) Plaintiffs allege that they needed one additional day to make the payment, and that they contacted Ocwen to request the additional time but were denied the requested grace period. (*Id*. ¶¶ 41-43.) Plaintiffs further allege that they were told by Ocwen that if their payment was late, they would automatically be placed in foreclosure. (*Id*. ¶ 43.) Ocwen allegedly offered no further remedies or options that would have allowed Plaintiffs to avoid foreclosure. (*Id*. ¶ 44.)

On April 3, 2010, Plaintiffs received a Notice of Foreclosure from Randall S. Miller & Associates, P.C., the law firm retained to commence foreclosure proceedings on the Property. (*Id*. ¶¶ 45-46.) The Foreclosure Notice was published on or about August 4, 2010, indicating that the foreclosure sale was scheduled for September 23, 2010. (*Id*. ¶ 47.) On or around August 24, 2010, Plaintiffs requested an accounting and documentation detailing their loan history. (*Id*. ¶ 48.) Ocwen voluntarily

postponed the foreclosure sale. (*Id*. ¶ 49.) On or about September 23, 2010, notice was published that the foreclosure sale would take place on November 18, 2010. (*Id*. ¶ 50, Ex. F.) On November 18, 2010, the Property was sold at a foreclosure sale. (*Id*. ¶ 51.) The redemption period expired on May 18, 2011. (*Id*. ¶ 52.) Defendants have not yet proceeded with eviction and Plaintiffs continue to occupy the Property. (*Id*. ¶ 53.)

Plaintiffs initiated this action on May 4, 2011 by filing a Summons and Complaint in Scott County District Court. (Doc. No. 1.) On May 27, 2011, Defendants removed the action to this Court. (*Id*.) Defendants moved to dismiss the Complaint. (Doc. No. 3.) The parties stipulated that Plaintiffs could, and the Court permitted Plaintiffs to, file an Amended Verified Complaint. (Doc. Nos. 9 & 10.) In the Amended Verified Complaint, Plaintiffs assert eight causes of action: (1) declaratory judgment; (2) injunctive relief; (3) breach of contract; (4) breach of mortgagee duty; (5) fraud; (6) negligent misrepresentation; (7) promissory estoppel; and (8) unjust enrichment. (Doc. No. 19, Am. Verified Compl; Doc. No. 22, Am. Verified Compl. with Exhibits.) Defendants again moved to dismiss the Amended Verified Complaint. (Doc. No. 11.) The Court considers Defendants' motion below.

## DISCUSSION

### I.    Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id*. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

## II.    Promissory Estoppel

In Count VII of their Amended Verified Complaint, Plaintiffs assert a claim for promissory estoppel.  Plaintiffs argue that Defendants made promises regarding Plaintiffs' enrollment in a permanent modification.  In particular, Plaintiffs assert that by offering modification terms in the 2008 Loan Modification Offer, Ocwen made a clear and definite promise to Plaintiffs that they would continue to qualify for the terms in that

offer (including a modified payment in the amount of $1,775.56 per month).  Plaintiffs

further allege that they reasonably relied on that promise to their detriment.  Defendants

argue that Plaintiffs' promissory estoppel claim fails because it is not supported by the

alleged facts and is barred by the Statute of Frauds and Minnesota's Credit Agreement

Statute.[2]

Minnesota's Credit Agreement Statute bars the enforcement of "credit

agreements" that are not in writing and signed by both the creditor and debtor.  *See* Minn.

Stat. § 513.33, subd. 2 ("A debtor may not maintain an action on a credit agreement

unless the agreement is in writing, expresses consideration, sets forth the relevant terms

and conditions, and is signed by the creditor and the debtor.").  *See also Grueling v. Wells

Fargo Home Mortg., Inc.*, 690 N.W.2d 757, 761-62 (Minn. Ct. App. 2005) (explaining

that "claims on agreements falling under section 513.33 fail as a matter of law if the

agreement is not in writing").  The crux of Plaintiffs' argument is that they were

promised, via the 2008 Loan Modification Offer, a modification that would have resulted

in payments of $1,775.56 per month, but that Defendants did not provide Plaintiffs with

the terms of the 2008 offer under the 2009 Loan Modification Agreement.  Thus,

Plaintiffs are seeking to enforce an alleged oral loan modification.

---

[2]     In addition, Defendants initially argued that Plaintiffs' claim for promissory
estoppel, along with their claims for fraud and misrepresentation, were not permissible
because the parties have a contractual relationship via the 2009 Loan Modification.  In
their opposition, Plaintiffs clarified that these claims pertain to the representations made
in connection with the 2008 Loan Modification Offer.

A loan modification constitutes a credit agreement.  *See, e.g.*, *Myrlie v. Countrywide Bank*, 775 F. Supp. 2d 1100, 1108-09 (D. Minn. 2011).[3]  Therefore, to be enforceable, the 2008 Loan Modification Offer must be in writing and signed by the creditor and the debtor.  There is no dispute, however, that the 2008 Loan Modification Offer was not signed or accepted by Plaintiffs.  Accordingly, it is not legally enforceable under Minnesota law.  *See, e.g.*, *Ming'ate v. Bank of Am., N.A.*, Civ. No. 11-1787, 2011 WL 4590431, *4 (D. Minn. Sept. 30, 2011) (explaining that the Minnesota Statute of Frauds, and specifically Minn. Stat. § 513.33, provides that implied-in-fact oral promises to modify loans fail as a matter of law).

Even if the Minnesota Credit Agreement Statute did not bar Plaintiffs' promissory estoppel claim, it would fail to survive Defendants' motion to dismiss.  "Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact." *Martens v. Minnesota Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000) (quotation

---

[3]       Minnesota Statute § 513.33, subd. 3, provides:

(a) The following actions do not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of subdivision 2:

(1) the rendering of financial advice by a creditor to a debtor;

(2) the consultation by a creditor with a debtor; or

(3) *the agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements.*

Minn. Stat. § 513.33, subd. 3 (emphasis added).

and citations omitted).  Promissory estoppel has three elements:  (1) a clear and definite promise; (2) the promisor intended to induce reliance and such reliance occurred to the promisee's detriment; and (3) the promise must be enforced to prevent injustice.  *Id.*  Based on Plaintiffs' allegations in their complaint, the Court concludes that Plaintiffs cannot establish the elements of a promissory estoppel claim.  At most, Plaintiffs have alleged that they hoped to, but did not, enter into a loan modification under the terms offered in December 2008.  Moreover, Plaintiffs, who admittedly were delinquent on their payments, have not alleged any facts to suggest that enforcing the alleged oral promise is necessary to prevent injustice.

## III.    Fraud and Negligent Misrepresentation

In Counts V and VI of the Verified Amended Complaint, Plaintiffs allege causes of action for fraud and negligent misrepresentation.  Under the common law of Minnesota, the elements of fraud are:  (1) a false representation of a past or present material fact which was susceptible of knowledge; (2) the defendant knew the representation was false or made it without knowing whether it was true or false; (3) an intention to induce plaintiff to act in reliance on the misrepresentation; (4) the representation caused the plaintiff to act in reliance thereon; and (5) the plaintiff suffered pecuniary damage as a result of the reliance.  *Hoyt Props., Inc. v. Prod. Res. Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (quoting *Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520, 532 (Minn. 1986)).

A person makes a negligent misrepresentation when:

(1) in the course of his or her business, profession, or employment, or in a transaction in which he or she has a pecuniary interest, (2) the person supplies false information for the guidance of others in their business transactions, (3) another justifiably relies on the information, and (4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information.

*Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 369 (Minn. 2009).

 "Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity." *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010). Accordingly, the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure are applicable to claims of both fraud and negligent misrepresentation.

Plaintiffs assert that their fraud and misrepresentation claims pertain to the false representation that Plaintiffs qualified for a modification consistent with the terms offered in the 2008 Loan Modification Offer. In particular, Plaintiffs allege that via the 2008 offer, Ocwen represented that Plaintiffs qualified for a modification that would reduce their payments to $1,775.56 per month. Plaintiffs further allege that, despite the fact that they did not accept the 2008 Loan Modification Offer, when Plaintiffs continued to seek a modification with Ocwen, Ocwen was bound by the terms presented in the 2008 offer. For example, Plaintiffs assert that Ocwen indicated to Plaintiffs that, to receive a modification (and specifically a modification consistent with the terms of the 2008 offer), Plaintiffs were required to apply for a HAMP loan modification. Plaintiffs further allege

that despite their submission of a HAMP modification application, which was denied, Plaintiffs were ultimately offered a loan modification that would only reduce their payments to $1,960 per month.

Plaintiffs' factual allegations fail to state claims for fraud and negligent misrepresentation. The 2008 Loan Modification Offer was an offer for a modification. The offer clearly stated that the offer was "on a limited basis" and urged Plaintiffs to "ACT NOW." (Am. Verified Compl. ¶ 21, Ex. A.) Ocwen made no representation that the terms of the 2008 Loan Modification Offer would remain available in the future. Indeed, Plaintiffs do not allege that Ocwen specifically promised that a modification under the terms of the 2008 Loan Modification Offer would be provided to them, but instead argue that no one at Ocwen told them that a subsequent offer would not be the same. (Doc. No. 15 at 3.) The Court concludes that Plaintiffs' allegations fail to demonstrate that Defendants made a false representation with respect to the continued availability of the terms of the 2008 Loan Modification Offer. In addition, Plaintiffs have failed to adequately allege that they relied on any misrepresentation to their detriment. There is no dispute that Plaintiffs did not accept the 2008 Loan Modification Offer, or that Plaintiffs did enter into, and subsequently defaulted on, the 2009 Loan Modification Agreement. Moreover, Plaintiffs have not alleged that they could have made their original monthly payments under the Mortgage between December 2008 (the date of the alleged misrepresentations) and August 2009. Plaintiffs have failed to sufficiently allege facts to show that Defendants' alleged failure to follow through on the promise to enter into the terms of the 2008 Loan Modification Offer was the proximate cause of

foreclosure or other damages to Plaintiffs.  Therefore, the Court concludes that Plaintiffs'

fraud and negligent misrepresentation claims fail.

## IV.     Unjust Enrichment

In Count VIII, Plaintiffs assert a claim for unjust enrichment, alleging that

Defendants unlawfully received a benefit from Plaintiffs in the form of payments

pursuant to the 2009 Loan Modification Plan and were unjustly enriched by their refusal

to agree to the terms of the 2008 Loan Modification Offer and by foreclosing on the

Property.  In support, Plaintiffs argue that the unjust enrichment occurred independent of

and prior to the second modification.  Thus, Plaintiffs argue that they were entitled to the

terms of the 2008 Loan Modification Offer, despite the fact that they accepted the terms

of the 2009 Loan Modification.  Plaintiffs allege that Defendants received the subsequent

modification payments pursuant to the 2009 Loan Modification to which they were not

entitled because of their allegedly fraudulent representations.

To prevail on a claim for unjust enrichment, Plaintiffs will have to prove that

Defendants received something of value, which they were not entitled to, under

circumstances that would make it unjust to permit its retention.  *See Southtown Plumbing,*

*Inc. v. Har–Ned Lumber Co. Inc*., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).

Plaintiffs must show that Defendants were "unjustly enriched in the sense that the term

unjustly could mean illegally or unlawfully."  *First Nat'l Bank of St. Paul v. Ramier*, 311

N.W.2d 502, 504 (Minn. 1981) (internal quotations omitted).

The Court concludes that Plaintiffs have failed to allege that Defendants unjustly

obtained anything of value from Plaintiffs.  Not only have Plaintiffs failed to sufficiently

allege their claims for fraud and negligent misrepresentation, but they have alleged simply no facts that would demonstrate that Defendants were not contractually entitled to foreclose on the Property following Plaintiffs' default on the 2009 Loan Modification Agreement.  In addition, the proceeds of the Mortgage loan were used for Plaintiffs' benefit and the benefit of the Property.  Accordingly, the Court dismisses Plaintiffs' unjust enrichment claim.

**V.     Declaratory Judgment and Injunctive Relief**

In Counts I and II of their Amended Verified Complaint, Plaintiffs seek declaratory judgment and injunctive relief.  Plaintiffs seek a declaratory judgment that "Plaintiffs performed under the Modification," that "Defendants must honor the terms of the Modification," and that Plaintiffs shall continue making payments "per the terms of HAMP."  (Am. Verified Compl. ¶ 58.)  Further, Plaintiffs allege that they are suffering irreparable harm as a result of Defendants' alleged misrepresentations and unlawful foreclosure proceedings and seek the "tolling and extending of Plaintiffs' right to redeem the Property pending a full and final decision on the merits" of this action.  (*Id*. ¶¶ 61-62.)

These two claims again focus on Plaintiffs' allegations that they are entitled to the terms of the December 2008 Loan Modification Offer.  As discussed above, reliance on those terms is barred by the Minnesota Credit Agreement Statute.  Moreover, Plaintiffs concede that they failed to make timely payments on their Mortgage and that they defaulted on their loan.  Once default occurred, the terms of the Mortgage Agreement permitted Ocwen to proceed with foreclosure.  (*Id*. ¶ 36, Ex. C at ¶ 6(a)-(b).)  Accordingly, these claims are properly dismissed.

## VI.    Breach of Contract

In Count III, Plaintiffs assert a cause of action for breach of contract related to the 2009 Loan Modification.  In particular, Plaintiffs allege that they entered into a contract whereby they agreed to make an initial payment of $2,334 and subsequent monthly payments of $1,960.  (Am. Verified Compl. ¶ 64.)  These are the terms of the 2009 Loan Modification.  Plaintiffs also assert that they "fulfilled all of [their] contractual obligations necessary."  (*Id*. ¶ 66.)  Plaintiffs, however, concede that they failed to make the required monthly payments.  Moreover, Plaintiffs have made no arguments supporting this cause of action.  The Court concludes that Plaintiffs have abandoned the breach of contract claim.  Furthermore, even if the claim had not been abandoned, Plaintiffs have failed to present any facts that would support a claim for the breach of the 2009 Loan Modification.  For these reasons, the Court dismisses Count III.

## VII.   Minnesota Statute § 580.11

In Count IV, Plaintiffs allege a cause of action for breach of mortgagee duty under Minnesota Statute section 580.11, which provides that:

> The mortgagee, the mortgagee's assignee, or the legal representative of either or both, may fairly and in good faith purchase the premises so advertised, or any part thereof, at such sale.

Minn. Stat. § 580.11.  Chapter 580 discusses procedural requirements concerning foreclosures by advertisement.  The statute does not impose any fiduciary duty on the mortgagee; nor does it apply to a mortgagee's actions prior to foreclosure.  *See Scott v. Wells Fargo*, Civ. No. 10-3368, 2011 WL 381766, *4 (D. Minn. Feb. 2, 2011).  *See also Cox v. Mortg. Elec. Registration Sys., Inc*., Civ. No. 10-4626, 2011 WL 2600700, *9 (D.

Minn. June 30, 2011).  Plaintiffs have not alleged that Defendants acted unfairly in purchasing the Property at the advertised foreclosure sale, other than generally alleging that Defendants acted unfairly by failing to provide Plaintiffs with the terms of the 2008 Loan Modification Offer, representing that the loan modification was the only way to avoid foreclosure, and purchasing the Property after making the alleged fraudulent representations.  The alleged unfair actions that form the basis for this claim all occurred prior to the actual sale.  Accordingly, Plaintiffs fail to state a viable claim for a breach of mortgagee duty and the claim is properly dismissed.

Although the Court has concluded that Plaintiffs' claims are all properly dismissed, the Court does not condone the alleged actions of Defendants.  Indeed, even assuming Plaintiffs' allegations are true, Defendants can fairly be criticized for a lack of professionalism.  However, Defendants' actions do not rise to the level of actionable conduct.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion to Dismiss (Doc. No. [11]) is **GRANTED**.

2.      Plaintiffs' Amended Verified Complaint (Doc. Nos. [19] & [22]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 15, 2011            s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     United States District Judge